UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRAND TRAVERSE BAND OF
OTTAWA AND CHIPPEWA INDIANS;
GRAND TRAVERSE BAY WATERSHED
INITIATIVE, INC.; and ELK-SKEGEMOG          Civil Action No. _____
LAKES ASSOCIATION,

Hon. _____

                            Plaintiffs,

v.

BURNETTE FOODS, INCORPORATED

                            Defendant,

_____

# EXHIBIT 1

# TO COMPLAINT

  

November 17, 2022

VIA CERTIFIED MAIL

Michael S. Regan
Office of the Administrator
Mail Code 1101A
Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Liesl Clark
Director, Michigan Dept. of Environment,
Great Lakes and Energy
Constitution Hall
P.O. Box 30473
Lansing, MI 48909-7973

Debra Shore
Regional Administrator, EPA Region 5
U.S. Environmental Protection Agency
77 West Jackson Boulevard
Chicago, IL 60604-3507

Teresa Seidel
Director, Water Resources Division
Michigan Dept. of Environment, Great Lakes
and Energy
P.O. Box 30458
Lansing, MI 48909-7958

Merrick B. Garland
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

William Sherman
Burnette Foods, Incorporated
701 US Highway 31 South
Elk Rapids, MI 49629

**Re:   Clean Water Act Notice of Intent to Sue/60-day Notice Letter**
**Burnette Foods, Inc.**

Dear Administrator Regan and others,

Please accept this letter on behalf of the Grand Traverse Bay Watershed Initiative, Inc., d/b/a The Watershed Center Grand Traverse Bay (TWC), the Grand Traverse BAYKEEPER® (Baykeeper), the Elk-Skegemog Lakes Association (ESLA), and the Grand Traverse Band of Ottawa and Chippewa Indians (GTB) regarding ongoing violations of the Clean Water Act, state law, and state permits by the Burnette Foods, Inc. (Burnette) facility located at 701 South US-31, Elk Rapids, MI 49629 with spray irrigation fields located at 11100 Elk Lake Road, Williamsburg, MI 49690.

Since at least the 1980s and continuing still, Burnette discharges fruit processing wastewater (effluent) to the ground through spray irrigation fields. The Michigan Department of Environment, Great Lakes and Energy (EGLE) issued the current Groundwater Permit (Permit No. GW1810211) to Burnette in 2017. Information available to TWC, the Baykeeper, ESLA, and GTB shows that Burnette is routinely in violation of their Groundwater Permit and state law and is potentially impairing area groundwater.

On information and belief, Burnette's effluent routinely discharges directly to a wetland network that flows into an unnamed warmwater stream known locally as Spencer Creek (formerly and sometimes referred to as Grettel's Creek or Gretel Creek) that empties into Elk Lake. The receiving wetlands, creek, and lake are surface waters of the state and Burnette's effluent likely pollutes, impairs, and significantly degrades the water quality of the wetlands, creek, and lake.

1

EXHIBIT 1
Page 1 of 20

On information and belief, Burnette currently lacks any permit to discharge this effluent into surface waters of the state. The direct discharge of effluent into surface waters of the state without a permit, and consequent water quality impairments, violates federal and state law.

In addition, on information and belief, Burnette currently has no plan that will ensure its effluent complies with Michigan's Water Quality Standards and Section 3109(1) of Part 31 of the Natural Resource and Environmental Protection Act 451 of 1994.

Section 505 of the Clean Water Act requires that 60 days prior to the initiation of a citizen's civil lawsuit, a citizen must give notice of the violations and the intent to sue to the violator, the Administrator of the U.S. Environmental Protection Agency (EPA), the Regional Administrator of the EPA, the U.S. Attorney General, and the Chief Administrative Officer of the state in which the violations have occurred. 33 USC § 1365(b)(1)(A). This letter provides notice of Burnette's violations of the undersigned entities' intent to sue.

**EXHIBIT 1**
**Page 2 of 20**

## Table of Contents

1.      Prospective Plaintiffs .......................................................................................... 4

2.      The Burnette Foods, Inc., Wastewater Discharge System ............................... 4

Figure 1: Burnette Foods facility and spray irrigation fields in the Village of Elk Rapids and Elk Rapids Township, respectfully. Image from Mackinac Environmental Technology, Inc Site Status Report – Burnette Foods – Elk Rapids, 2016. ...................................... 5

3.      Burnette Discharges Effluent to Land in Violation of its Groundwater Discharge Permit and EGLE Groundwater Rules ............................................................... 5

4.      Observed Conditions Prompt ESLA to Submit Complaints to EGLE ........................ 6

5.      Burnette's Land Discharge Overflows to Wetlands ....................................... 6

Table 1: Summary information from EGLE's MiEnviro Portal database documenting Burnette's effluent ponding and direct discharge to surface waters of the state from 2007-2021. .................................................................................................................. 7

6.      Burnette's Self-Reported Data, EGLE Data, and Field Observations Indicate Likely Effluent Impacts to Wetlands, Spencer Creek, and Elk Lake ........................ 8

Figure 2: ESLA sampling locations on Spencer Creek. ..................................................... 9

Table 2: *E. coli* data collected by ESLA and processed by SOS Analytical in Spencer Creek from 2019-2022. ....................................................................................................... 9

Table 3: Total phosphorus data collected by ESLA and processed by SOS Analytical in Spencer Creek in 2022. .................................................................................................. 10

7.      Violations of Clean Water Act (Federal and State Law) ................................ 11

8.      Violations of Michigan Environmental Protection Act ................................... 14

9.      Violations are Ongoing and Unresolved ........................................................ 15

10.     Remedy ............................................................................................................. 15

Appendix A: Photographic Documentation of Conditions Observed by ESLA on Spencer Creek ................................................................................................................ 17

EXHIBIT 1
Page 3 of 20

### 1.   Prospective Plaintiffs

The Grand Traverse Bay Watershed Initiative, Inc., d/b/a The Watershed Center Grand Traverse Bay (TWC), is a Michigan nonprofit organization. The mission of TWC is to advocate for clean water in Grand Traverse Bay and act to protect and preserve its watershed. TWC's Grand Traverse **BAYKEEPER**® (Baykeeper) is one of over 300 **WATERKEEPER**® organizations representing the international **WATERKEEPER**® ALLIANCE. The Baykeeper protects water quality by advocating, educating, monitoring, and patrolling Grand Traverse Bay and its watershed. TWC and the Baykeeper advocate for policies and actions that protect and preserve water quality, including the use of litigation and administrative challenges to ensure wetlands, lakes, rivers, beaches, and streams within the Grand Traverse Bay watershed meet all substantive water quality standards guaranteed by federal, state, and local statutes and regulations. The office of TWC and the Baykeeper is located at 13170 South West Bay Shore Drive, Suite 102, Traverse City, MI 49684.

The Elk-Skegemog Lakes Association (ESLA) is a Michigan nonprofit organization. ESLA promotes an understanding and appreciation of the rights and responsibilities of riparian landowners and takes necessary or desirable actions to protect and preserve the environment of the Elk-Skegemog watershed. ESLA conducts periodic scientific tests of the quality of water in the watershed and aims to solve problems involving lake levels, water safety, and water pollution that could lead to the deterioration of water quality. The mailing address for ESLA is P.O. Box 8, Elk Rapids, MI 49629.

The Grand Traverse Band of Ottawa and Chippewa Indians (GTB) is a Sovereign Nation. GTB honors their ancestors and strives to empower the wellbeing of their present and future members. GTB has the responsibility to protect the natural resources of the 1836 Treaty Ceded Territory that includes 4.3 million acres of public lands over 32 counties. GTB members utilize their usufructuary rights, which are reaffirmed under the 2007 Consent Decree, to hunt, fish, trap, and gather across the 1836 Treaty Ceded Territory, making it crucial for GTB to protect and restore the species and habitats vital to the continued responsible utilization of these resources. The mailing address for GTB is 2605 N. West Bay Shore Drive, Peshawbestown, MI 49682.

### 2.   The Burnette Foods, Inc., Wastewater Discharge System

Information available to the undersigned indicates that Burnette Foods, Inc. (Burnette) is a locally and nationally sourced distributor of fruits and vegetables with production facilities throughout Michigan. The Burnette facility located in Elk Rapids is a fruit processing facility; on information and belief, the facility produces and cans fruit fillings and apple slices. The facility generates canning and fruit processing wastewater (effluent) during its fruit processing activities. Public information indicates that, prior to discharge, the production facility effluent is combined with the production facility stormwater runoff and other wastewater streams. Burnette discharges its canning and fruit processing effluent by applying the effluent to crops including alfalfa hay, bromegrass hay, and timothy orchard grass hay to fields just south of the Village of Elk Rapids. On information and belief, Burnette's effluent is piped approximately 1.3 miles to a pump house located at or near Burnette's spray irrigation fields at 11100 Elk Lake Road in Elk Rapids Township. On information and belief, this effluent contains fruit washing and processing wastewater and stormwater from the parking areas and roof drains at the facility located at 701 S. US-31 in the Village of Elk Rapids.

On information and belief, Burnette maintains an approximately 40-acre land treatment system located at or near 11100 Elk Lake Road. This system is designed to use cultivated crops to treat effluent before infiltration into groundwater. According to public records, Burnette owns about

EXHIBIT 1
Page 4 of 20

100 acres near Elk Lake Road characterized by orchards and fields, with a substantial wetland network bordering the fields along the west (Figure 1). These wetlands are the headwaters for Spencer Creek that begins on Burnette-owned parcels and flows approximately 3,000 feet before outletting to Elk Lake.

**Figure 1: Burnette Foods facility and spray irrigation fields in the Village of Elk Rapids and Elk Rapids Township, respectively. Image from Mackinac Environmental Technology, Inc Site Status Report – Burnette Foods – Elk Rapids, 2016.**



### 3. Burnette Discharges Effluent to Land in Violation of its Groundwater Discharge Permit and EGLE Groundwater Rules

Michigan law prohibits the direct or indirect discharge onto the ground or into the groundwater of waste effluent, wastewater, pollutants, cooling water, and combinations of these streams without a permit. Mich. Admin. R. 323.2205. EGLE Rule 2218 authorizes the department to issue a discharge permit to treat wastewater using a treatment system that has "sufficient hydraulic capacity and detention time to adequately treat the anticipated organic and inorganic pollutant loading." Mich. Admin. R. 323.2218(2). EGLE rules require the discharge to the ground or groundwater under Rule 2218 to meet the standards in Rule 2222. Mich. Admin. R. 323.2222(1). EGLE rules require discharge monitoring necessary to assess compliance with the discharge rules and require the discharger to provide regular monitoring reports to EGLE. Mich. Admin. R. 323.2223(1), 323.2225. EGLE rules require dischargers that exceed a permit limit to take corrective action and authorize EGLE to require corrective action. Mich. Admin. R. 323.2227(1), 323.2228. EGLE Rule 2233 regulates the land treatment of wastewater. Among other requirements, a system designed for the land treatment of wastewater must prevent surface

EXHIBIT 1
Page 5 of 20

runoff from entering or exiting the system. Mich. Admin. Rule 323.2233(4)(a)(i). For a slow rate land treatment system, EGLE Rule 2234 requires wastewater to be absorbed and held within the effective root zone of the vegetative cover on the site of the receiving wastewater. Mich. Admin. R. 323.2234(2).

Burnette received its latest Rule 2218 Authorization from the Department of Environmental Quality (DEQ, now EGLE) on June 1, 2017, replacing a prior version of the permit. Permit No. BW1810211. Public documents available on EGLE's MiEnviro Portal (formerly MiWaters) database indicate that Burnette has self-reported, and EGLE has confirmed, numerous violations of its groundwater discharge permit. Specifically, MiEnviro Portal attributes 2,583 violations to the Burnette facility since 2015 when MiEnviro Portal was created to electronically display permitting information and compliance documents. Violations are attributed to a combination of (a) failure to timely report data; (b) direct discharges to surface waters of the state; (c) exceedances of permit standards for effluent discharge volume and application rates; and (d) exceedances of permit parameters for effluent including sodium, chloride, pH, phosphorus, and nitrogen. The most recent Violation Notice available on MiEnviro Portal dated November 15, 2021, documents violations from October 2020 through October 2021, including application rate exceedances and exceedances of discharge standards, among other permit and Part 22 violations.

### 4. Observed Conditions Prompt ESLA to Submit Complaints to EGLE

Between 2008 and 2021, ESLA filed several complaints with EGLE raising concerns about observed conditions in the wetlands, Spencer Creek, and Elk Lake potentially caused by Burnette's effluent discharge:

- 2008 complaint indicated adjacent wetlands, Spencer Creek, and Elk Lake were being adversely affected by the effluent from Burnette's spray irrigation fields.

- 2019 complaint indicated degraded water quality, specifically unnatural foam, color, and high *E. coli* concentrations in Spencer Creek and Elk Lake.

- 2020 complaint indicated a red coloration in Spencer Creek and Elk Lake.

- 2021 complaint (brought to ESLA by property owner Brian Taylor) indicated discolored water along the shoreline of Elk Lake coming from Spencer Creek and suspended solids described as cherry pulp in Spencer Creek and Elk Lake.

Due to these complaints, EGLE performed inspections and, in some instances, issued Violation Notices.

### 5. Burnette's Land Discharge Overflows to Wetlands

On information and belief, excessive effluent that Burnette applies to the spray irrigation fields overflows towards the wetland network, resulting in direct discharge to the wetland network when soils are saturated and/or effluent application rates are exceeded. On information and belief, hydraulic overloading in areas with a shallow low permeability silty clay layer may also cause subsurface lateral movement of Burnette's effluent to the wetland network.

According to EGLE communications and documents available on MiEnviro Portal, starting in 2007 and continuing until at least 2021, ponding of effluent was observed at the site. In 2008, a complaint reported to DEQ (now EGLE) by ESLA alleged that adjacent wetlands, Spencer Creek, and Elk Lake were being adversely affected by the effluent from Burnette's spray

EXHIBIT 1
Page 6 of 20

irrigation fields, prompting a DEQ inspection. According to DEQ Violation Notice 003697, the allegations in the complaint were confirmed by the inspection. DEQ staff identified the following violations during the 2008 inspection: BOD (biological oxygen demand) loading in surface waters, direct discharge into wetlands, saturated soils, ponded effluent, and anaerobic soil conditions. An EGLE inspection in July 2021 referred to prior complaints received in 2019, 2020, and 2021 regarding impacts to the creek and Elk Lake and documented saturated irrigation fields causing ponding, anerobic conditions with odors, and likely wetland impacts.[1]

Several compliance documents available on MiEnviro Portal illustrate numerous observations by regulators of effluent ponding, saturated soils, and direct discharge to waters of the state at or from Burnette's spray irrigation field (Table 1).

**Table 1: Summary information from EGLE's MiEnviro Portal database documenting Burnette's effluent ponding and direct discharge to surface waters of the state from 2007-2021.**

| Date | Document Title | Observations & Concerns Identified |
|------|----------------|-----------------------------------|
| 8/3/2007 | District Application and Compliance Comments | Ponding of effluent observed |
| 9/29/2008 | Violation Notice 003697 | High BOD in surface waters downstream of fields, direct discharge into wetlands observed, saturated soils |
| 8/12/2011 | Compliance Evaluation Inspection | Ponding of effluent observed |
| 5/22/2012 | Compliance Evaluation Inspection | Discussion of data from CMRs that showed high BOD loading to Spencer Creek |
| 9/5/2014 | Groundwater Permit Inspection | Ponding of effluent observed |
| 8/21/2019 | Violation Notice 009839 | Direct discharge of effluent into wetlands observed |
| 11/6/2020 | Second Violation Notice 00984 | Ponding and saturated soils |
| 11/15/2021 | Violation Notice 012414 | Ponding and saturated soils, *E. coli* found in effluent, unnaturally high BOD in wetlands, elevated levels of arsenic in wetlands |

[1] "It appears likely that effluent has been entering the adjacent outer wetland periodically based on the extent of saturated soils, ponding and runoff directed to this area noted during the inspection. In addition, the water in the wetland was murky and dark colored and the sample result from the outer wetland had a BOD reading of approximately 1,900 mg/l." 7/13/2021 Comprehensive Inspection, p. 6.

EXHIBIT 1
Page 7 of 20

6.   **Burnette's Self-Reported Data, EGLE Data, and Field Observations Indicate Likely Effluent Impacts to Wetlands, Spencer Creek, and Elk Lake**

Information available to TWC, the Baykeeper, ESLA, and GTB indicates that Burnette's effluent is periodically discharged to surface waters of the state and is likely causing impairment to wetlands, Spencer Creek, and Elk Lake. Surface water impairments include but are not limited to unnaturally high BOD in wetlands and Spencer Creek; low dissolved oxygen in Spencer Creek; elevated concentrations of total phosphorus in Spencer Creek; elevated levels of *E. coli* in Spencer Creek and Elk Lake; unnatural foam, odors, suspended solids, and colors in Spencer Creek; unnatural colors in Elk Lake; and other likely impairments.

Burnette's groundwater discharge permit requires reporting for certain parameters downstream of their discharge field at Location EQ-2 in Spencer Creek. This includes reporting BOD, nitrogen, ammonia, pH, DO, chloride, sodium, and total phosphorus levels. Starting in at least 2008 and continuing until at least 2022, documents on MiEnviro Portal, including Burnette's self-reported Discharge Monitoring Reports (DMRs) and DEQ/EGLE communications, identify abnormally high BOD in nearby surface waters, high concentrations of total phosphorus in Spencer Creek (monitoring Location EQ-2), and low levels of dissolved oxygen in Spencer Creek (monitoring Location EQ-2).[2]

According to sampling conducted by EGLE on July 27, 2021, *E. coli* bacteria was 1,000 CFU/100 mL in Burnette's effluent. EGLE Violation Notice 012414 dated November 11, 2021, suggested additional sampling should be conducted to verify the presence and extent of *E. coli* contamination in Burnette's discharge. On information and belief, Burnette has refused to monitor its effluent for *E. coli.*

Further, data collected by ESLA documents substantial *E. coli* concerns in Spencer Creek and Elk Lake (Figure 2, Table 2) as well as phosphorus concerns in Spencer Creek (Figure 2, Table 3). ESLA collected several grab samples at various locations in Spencer Creek and one location in Elk Lake from 2019-2022. *E. coli* and total phosphorus samples were processed by SOS Analytical, Inc., which is a full-service and EGLE-certified microbiology laboratory.

---

[2] See *e.g.;* Violation Notice 003697 (07/29/2008), Burnette DMR (05/147/2016), Burnette DMR (06/1/2016), Burnette DMR (06/20/2016), Burnette DMR (08/23/2016), Burnette DMR (09/30/2016), Burnette DMR (07/05/2017), Burnette DMR (08/28/2018), Burnette DMR (08/27/2019), Burnette DMR (02/25/2020), Burnette DMR (08/27/2020), Burnette DMR (11/17/2020), Burnette DMR (02/17/2021), Burnette DMR (05/25/2021), Violation Notice 012141 (7/27/2021), Burnette DMR (7/27/2021), Burnette DMR (08/26/2021), Burnette DMR (02/24/2022).

EXHIBIT 1
Page 8 of 20

**Figure 2: ESLA sampling locations on Spencer Creek.**



**Table 2: *E. coli* data collected by ESLA and processed by SOS Analytical in Spencer Creek from 2019-2022.**

| Date | Location ID | *E. coli* per 100 mL water | | Date | Location ID | *E. coli* per 100 mL water |
|---|---|---|---|---|---|---|
| 7/2/2019 | C-2 | >2419 | | 6/20/2022 | C-9 | 488 |
| 7/2/2019 | C-2 | >2419 | | 7/25/2022 | C-9 | 488 |
| 7/2/2019 | C-2 | 1733 | | 8/1/2022 | C-8 | >2419 |
| 7/8/2019 | C-2 | 1986 | | 8/1/2022 | C-8 | >2419 |
| 7/8/2019 | S-C | >2419 | | 8/1/2022 | C-8 | >2419 |
| 7/22/2019 | C-3 | 579 | | 8/8/2022 | C-8 | 3654 |
| 7/22/2019 | C-4 | 517 | | 8/8/2022 | C-8 | 3654 |
| 7/22/2019 | C-5 | 488 | | 8/8/2022 | C-8 | 5172 |
| 7/22/2019 | C-6 | 461 | | 8/15/2022 | C-8 | 563 |

9

EXHIBIT 1
Page 9 of 20

| | | | | | | |
|---|---|---|---|---|---|---|
| 7/22/2019 | C-7 | 613 | | 8/15/2022 | C-8 | 426 |
| 7/22/2019 | C-8 | 1553 | | 8/15/2022 | C-8 | 450 |
| 7/22/2019 | C-9 | 649 | | 8/22/2022 | C-8 | 1333 |
| 7/9/2020 | C-2 | 629 | | 8/22/2022 | C-8 | 586 |
| 7/9/2020 | C-3 | 1203 | | 8/22/2022 | C-8 | 504 |
| 7/9/2020 | C-6 | 1203 | | 8/29/2022 | C-8 | 426 |
| 6/24/2021 | C-10 | 770 | | 8/29/2022 | C-8 | 399 |
| 6/24/2021 | C-11 | >2419 | | 8/29/2022 | C-8 | 419 |
| 6/24/2021 | C-8 | >2419 | | 9/27/2022 | C-8 | 733 |
| 6/24/2021 | C-9 | 1046 | | 9/27/2022 | C-9 | 933 |
| 6/20/2022 | C-8 | 345 | | | | |

**Table 3: Total phosphorus data collected by ESLA and processed by SOS Analytical in Spencer Creek in 2022.**

| Date | Location ID | Total Phosphorus (mg/L) |
|---|---|---|
| 7/25/2022 | C-9 | 0.96 |
| 8/3/2020 | C-9 | 0.26 |
| 8/22/2022 | C-9 | 0.72 |
| 9/27/2022 | C-9 | 0.11 |
| 10/25/2022 | C-9 | 0.06 |

In 2019, Samantha Ogle, ESLA's contracted Lake Biologist, was conducting *E. coli* sampling in Spencer Creek. Ogle was approached by a patron of Gretell's Cottage that has rented a cottage for decades at this small resort located immediately south of Spencer Creek's outlet to Elk Lake. This patron told Ogle that numerous times over the years they have had to either move their watercraft elsewhere along the shoreline or remove their watercraft from the lake entirely to avoid discharge from Spencer Creek staining their white watercraft a reddish color.

Since 2019, Ogle has visited Spencer Creek on a regular basis. Ogle has observed excessive amounts of unnatural foam throughout the summer, with the amount of foam increasing during July, August, and September (Appendix A). This foam has been accompanied by strong odors,

EXHIBIT 1
Page 10 of 20

orange/red settleable solids covering the stream bottom, and extreme fluctuations in water coloration. These conditions observed by Ogle varied dramatically from week to week.

The effluent from Burnette has likely had, and will continue to have, adverse impacts on aquatic habitat at the receiving location in the wetland network and Spencer Creek. In June 2022, Ogle and the Baykeeper conducted an aquatic macroinvertebrate species diversity and abundance assessment in Spencer Creek. Because of their known tolerances to physical and chemical conditions of a stream, aquatic macroinvertebrates are surveyed to assess the ecological condition of the stream. This evaluation indicated a compromised aquatic macroinvertebrate population that may be due to effluent discharge from Burnette. This monitoring was performed using protocols established by the Michigan Clean Water Corps (MiCorps) and follows MiCorps' established quality assurance measures as outlined in a state-approved Quality Assurance Project Plan. Through Michigan Executive Order #2003-15, MiCorps was created to assist EGLE in collecting and sharing water quality data in wadable streams across the state.

### 7.   Violations of Clean Water Act (Federal and State Law)

The Clean Water Act is a federal regulatory statute that is designed "to restore and maintain the chemical, physical, and biological integrity of [the] Nation's waters." 33 USC 1251(a). The Clean Water Act prohibits the "discharge of any pollutant" into "navigable waters" from any "point source," except when authorized by a permit issued under the National Pollutant Discharge Elimination System (NPDES). 33 USC 1311(a), 1342, 1362(12). The EPA or the states, pursuant to federally approved permit systems within their jurisdictions, issue NPDES permits for discharges into navigable waters. 33 USC 1342, 1370.

In 1973, EPA delegated authority to the state of Michigan to administer its own NPDES program. Michigan administers the NPDES program through the Michigan Department of Environment, Great Lakes and Energy (EGLE) and through Part 31 of the Natural Resources and Environmental Protection Act (NREPA). MCL 324.3101 *et seq.*

Section 3112 of Part 31 requires the discharge of effluents to waters of the state be authorized by a permit issued by EGLE. MCL 324.3112. Under Michigan law, a person who discharges wastewater may meet NPDES requirements by obtaining an individual Certificate of Coverage issued under Michigan rules, a general NPDES Permit, or an individual permit issued under Part 31, if applicable. Information available to TWC, the Baykeeper, ESLA, and GTB indicates that EGLE has not issued an individual Certificate of Coverage or other NPDES permit or authorization for Burnette's direct discharge of effluent into surface waters of the state in and around the site of the spray irrigation fields.[3] Although Burnette holds a state permit issued under Part 21 (permit to discharge wastewater to ground or groundwater), it lacks a NPDES permit issued by EGLE under Part 31 (permit to discharge wastewater to surface water).

Burnette's discharge to the ground that pools and discharges to wetlands is a point source discharge that requires a permit issued under Part 31.[4] Burnette's discharge into wetlands is a discharge into surface waters of the state that is subject to the Clean Water Act and rules

---

[3] Burnette holds a NPDES permit for noncontact cooling water discharged at an outfall from its processing facility that is an emergency backup. Permit No. MI0000485.
[4] Rule 323.2106 (permit requirements of dischargers).

**EXHIBIT 1**
**Page 11 of 20**

implementing it in Michigan.[5] Burnette's unpermitted discharges to wetlands are discharges into waters of the state that violate the Clean Water Act.

In addition, Burnette's discharge into wetlands threatens to impair water quality of surface waters of the state, including wetlands, Spencer Creek, and Elk Lake. Section 3109(1) of Part 31 (MCL 324.3109(1)) provides:

> A person shall not directly or indirectly discharge into the waters of the state a substance that is or may become injurious to any of the following:
> a) To the public health, safety, or welfare.
> b) To domestic, commercial, industrial, agricultural, recreational, or other uses that are being made or may be made of such waters.
> c) To the value or utility of riparian lands.
> d) To livestock, wild animals, birds, fish, aquatic life, or plants or to their growth or propagation.
> e) To the value of fish and game.

The standards for a Part 31 permit are in EGLE's Part 4 Rules, Water Quality Standards. The Water Quality Standard applicable to rivers and streams that are naturally capable of supporting warmwater fish includes the following (among others):

- **R 323.1050 Physical characteristics.** The surface waters of the state shall not have any of the following physical properties in unnatural quantities which are or may become injurious to any designated use:

  a) Turbidity
  b) Color
  c) Oil films
  d) Floating solids
  e) Foams
  f) Settleable solids
  g) Suspended solids
  h) Deposits

- **Rule 323.1060 Plant nutrients.**
  (1) Consistent with Great Lakes protection, phosphorus which is or may readily become available as a plant nutrient shall be controlled from point source discharges to achieve 1 milligram per liter of total phosphorus as a maximum monthly average effluent concentration unless other limits, either higher or lower, are deemed necessary and appropriate by the department.

  (2) In addition to the protection provided under subrule (1) of this rule, nutrients shall be limited to the extent necessary to prevent stimulation of growths of aquatic rooted, attached, suspended, and floating plants, fungi or bacteria which are or may become injurious to the designated uses of the surface waters of the state.

---

[5] Rule 323.1044(u). "Surface waters of the state" means all of the following, but does not include drainage ways and ponds used solely for wastewater conveyance, treatment, or control: (i) The Great Lakes and their connecting waters. (ii) All inland lakes. (iii) Rivers. (iv) Streams. (v) Impoundments. (vi) Open drains. (vii) Wetlands. (viii) Other surface bodies of water within the confines of the state."

EXHIBIT 1
Page 12 of 20

- **Rule 323.1062 Microorganisms.**
  - (1)  All surface waters of the state protected for total body contact recreation shall not contain more than 130 *Escherichia coli* (*E. coli*) per 100 milliliters, as a 30-day geometric mean. Compliance shall be based on the geometric mean of all individual samples taken during 5 or more sampling events representatively spread over a 30-day period. Each sampling event shall consist of 3 or more samples taken at representative locations within a defined sampling area. At no time shall the surface waters of the state protected for total body contact recreation contain more than a maximum of 300 *E. coli* per 100 milliliters. Compliance shall be based on the geometric mean of 3 or more samples taken during the same sampling event at representative locations within a defined sampling area.

  - (2)  All surface waters of the state protected for partial body contact recreation shall not contain more than a maximum of 1,000 *E. coli* per 100 milliliters. Compliance shall be based on the geometric mean of 3 or more samples, taken during the same sampling event, at representative locations within a defined sampling area.

- **Rule 323.1064 Dissolved oxygen in Great Lakes, connecting waters, and inland streams.**
  - (2b)  For surface waters of the state designated for use for warmwater fish and other aquatic life, except for inland lakes as prescribed in R 323.1065, the dissolved oxygen shall not be lowered below a minimum of 4 milligrams per liter, or below 5 milligrams per liter as a daily average, at the design flow during the warm weather season in accordance with R 323.1090(3) and (4). At the design flows during other seasonal periods as provided in R 323.1090(3), a minimum of 5 milligrams per liter shall be maintained. At flows greater than the design flows, dissolved oxygen shall be higher than the respective minimum values specified in this subdivision.

Based on publicly available data, Burnette's discharges to the wetlands would result in exceedances of Water Quality Standards in EGLE's Part 4 rules. In particular, ESLA has observed unnatural quantities of foams, color, and settleable solids in Spencer Creek and unnatural color in Elk Lake downstream of Burnette's discharges. Burnette's self-reported data indicates the effluent contains high levels of BOD, which likely causes dissolved oxygen in Spencer Creek to fall below the minimum threshold, contrary to Part 4 Water Quality Standards. EGLE data indicates that Burnette's effluent may result in high levels of *E. coli* in Spencer Creek. ESLA samples further indicate high levels of *E. coli* in Spencer Creek, which may be attributed to Burnette's discharges. Burnette's self-reported data and ESLA's collected data in Spencer Creek documents high levels of phosphorus that likely stimulates growth of aquatic plants. As a result, Burnette's discharge is unlikely to meet applicable Water Quality Standards in EGLE's Part 4 Rules adopted under Part 31.

For these reasons, TWC, the Baykeeper, ESLA, and GTB believe that the discharge from Burnette is in violation of the Clean Water Act and state law. The violation is ongoing and has not yet been cured. Unless the discharge is successfully and completely relocated to an alternative location, the discharge is further treated before it is discharged to surface waters of the state

EXHIBIT 1
Page 13 of 20

under a NPDES permit, or the ground discharge volume is substantially reduced to prevent overflow, the discharge will remain in violation of the Water Quality Standards.

### 8. Violations of Michigan Environmental Protection Act

In addition to the obligation to comply with the Clean Water Act and Part 31 of the Natural Resources and Environmental Protection Act (NREPA), Burnette is also required to comply with the Michigan Environmental Protection Act (MEPA), MCL 324.1701 *et seq.*

Section 1701 of MEPA states:

(1) The attorney general or any person may maintain an action in the circuit court having jurisdiction where the alleged violation occurred or is likely to occur for declaratory and equitable relief against any person for the protection of the air, water, and other natural resources and the public trust in these resources from pollution, impairment, or destruction.

(2) In granting relief provided by subsection (1), if there is a standard for pollution or for an antipollution device or procedure, fixed by rule or otherwise, by the state or an instrumentality, agency, or political subdivision of the state, the court may:

(a) Determine the validity, applicability, and reasonableness of the standard.

(b) If a court finds a standard to be deficient, direct the adoption of a standard approved and specified by the court. MCL 324.1701.

Section 1703 of MEPA states in part:

(1) When the plaintiff in the action has made a prima facie showing that the conduct of the defendant has polluted, impaired, or destroyed or is likely to pollute, impair, or destroy the air, water, or other natural resources or the public trust in these resources, the defendant may rebut the prima facie showing by the submission of evidence to the contrary. The defendant may also show, by way of an affirmative defense, that there is no feasible and prudent alternative to defendant's conduct and that his or her conduct is consistent with the promotion of the public health, safety, and welfare in light of the state's paramount concern for the protection of its natural resources from pollution, impairment, or destruction. Except as to the affirmative defense, the principles of burden of proof and weight of the evidence generally applicable in civil actions in the circuit courts apply to actions brought under this part.

* * *

(3) Costs may be apportioned to the parties if the interests of justice require.

MEPA further provides that its requirements are supplementary to existing administrative and regulatory procedures. MCL 324.1706. Consistent with these provisions, Michigan courts have long held that MEPA is to be read *in pari materia* with any other statutes that relate to natural resources. *Michigan Oil Co v Natural Resources Comm'n*, 406 Mich 1, 33 (1979). In other words, even if a relevant or applicable permitting statute does not directly adopt the requirements of MEPA, state agencies are nevertheless required to follow its mandate and to read the statute in concert with MEPA. *State Highway Comm'n v Vanderkloot* 392 Mich 159, 182-83 (1974).

The threshold question under MEPA is whether proposed action is likely to pollute, impair, or destroy the environment. *Ray v Mason County Drain Comm'r*, 393 Mich 294, 309 (1975). "Such a showing is not restricted to actual environmental degradation but also encompasses probable damage to the environment as well." *Id.* Michigan courts have defined "impair" to mean "to

EXHIBIT 1
Page 14 of 20

weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner." *Whittaker Gooding Co v Scio Twp Zoning Bd of Appeals*, 117 MichApp 18, 22 (1982), citing *Michigan United Conservation Clubs v Anthony*, 90 MichApp 99, 105-106 (1979). When a *prima facie* case of harm or potential harm is established, the entity emitting the pollution must demonstrate that there is "no feasible and prudent alternative" that would achieve the objective of the proposed action. MCL 324.1703(1). *See also Ray*, 393 Mich at 310-12.

The discharge from Burnette's fruit processing facility to surface waters of the state likely increases the amount of BOD, phosphorus, *E. coli*, and potentially other pollutants in surface waters of the state and impairs dissolved oxygen in Spencer Creek. This is likely to pollute, impair, or destroy water quality and habitat in the wetlands, Spencer Creek, and Elk Lake. Burnette has not demonstrated that there is no feasible and prudent alternative available. As such, Burnette's discharge violates MEPA.

### 9.    Violations are Ongoing and Unresolved

On information and belief, Burnette continues to violate their groundwater discharge permit. On information and belief, EGLE is processing an escalated enforcement action associated with Burnette's Elk Rapids facility and has been in enforcement discussions since at least April of 2022[6]. On information and belief, Burnette has not added capacity, reduced effluent discharge, and/or fixed, modified, or changed their systems to meet standards in their groundwater discharge permit. On information and belief, EGLE is aware of the violations and the likely harm to wetlands, Spencer Creek, and Elk Lake but has taken inadequate enforcement action to remedy the ongoing violations and harm caused by Burnette's discharges.

### 10.    Remedy

Information available to TWC, the Baykeeper, ESLA, and GTB indicates that Burnette may resolve the violations in multiple ways. For example, the discharge location may be relocated or redirected to avoid a discharge to surface waters to protect the wetlands, Spencer Creek, and Elk Lake. Alternatively, Burnette may seek to reduce the volume of effluent discharged to the ground to reduce the likelihood of exceeding its permitted application rates and/or overloading the hydraulic capacity of soils in the spray irrigation fields. Burnette may seek to increase the area of its spray irrigation fields to reduce pooling and discharging to the wetland. Burnette may install additional treatment before the effluent is applied to the spray irrigation fields. There are likely other resolutions available.

Upon expiration of the 60-day period, The Watershed Center Grand Traverse Bay, the Grand Traverse BAYKEEPER®, Elk-Skegemog Lakes Association, and the Grand Traverse Band of Ottawa and Chippewa Indians intend to file a citizen suit under Section 505(a) of the Clean Water Act, Parts 21 and 31 of the Natural Resources and Environmental Protection Act, and the Michigan Environmental Protection Act, for Burnette's prior, current, and anticipated continued and future violations discussed above. TWC, the Baykeeper, ESLA, and GTB will seek all remedies available under the Clean Water Act, state law, and local regulations. TWC, the Baykeeper, ESLA, and GTB will seek the maximum penalty available under the law, which is $37,500 per day. TWC, the Baykeeper, ESLA, and GTB will further seek a court order to prevent Burnette from discharging pollutants into surface waters of the state. A strong or substantial likelihood of success on the merits of these claims exists and irreparable injuries to the public,

---

[6] Kristine Rendon, Groundwater Permits Unit Supervisor, Water Resources Division, EGLE; personal communication, April 18, 2022.

EXHIBIT 1
Page 15 of 20

public trust resources, and the environment will result if Burnette further discharges pollutants into surface waters. TWC, the Baykeeper, ESLA, and GTB will also seek to recover costs, including attorneys' and experts' fees, under Section 1365(d) of the Clean Water Act.

During the 60-day notice period, however, TWC, the Baykeeper, ESLA, and GTB are willing to discuss effective remedies for the violations noted in this letter. If you wish to pursue such discussions in the absence of litigation, please initiate those discussions immediately.

All inquiries and responses to the issues raised in this letter should be directed to Christine Crissman, TWC Executive Director, at the address and phone number listed below.

Sincerely,


**Christine Crissman**
The Watershed Center Grand Traverse Bay
Executive Director

**Robert Campbell**
Elk-Skegemog Lakes Association
President


**Heather Smith**
Grand Traverse BAYKEEPER®

**David M. Arroyo**
Grand Traverse Band of Ottawa and
Chippewa Indians
Tribal Council Chairman


**Tracy Jane (TJ) Andrews**
Legal Counsel

**The Watershed Center Grand Traverse Bay**
13170 South West Bay Shore Drive, Suite 102
Traverse City, MI  49684
231.935.1514

EXHIBIT 1
Page 16 of 20

### Appendix A: Photographic Documentation of Conditions Observed by ESLA on Spencer Creek

**Photograph 1:** Foam observed on Spencer Creek on July 9, 2020, downstream of the Elk Lake Road culvert. Photo taken by ESLA.



EXHIBIT 1
Page 17 of 20

**Photograph 2:** Foam-free waters of Spencer Creek on April 28, 2022, downstream of the Elk Lake Road culvert, before the intensive fruit processing season. Photo taken by ESLA.



**EXHIBIT 1**
**Page 18 of 20**

**Photograph 3:** Foam and sheen observed on Spencer Creek on August 19, 2021, downstream of the Elk Lake Road Culvert. Photo taken by ELSA.



**EXHIBIT 1**
**Page 19 of 20**

**Photograph 4:** Foam observed on Spencer Creek on August 26, 2021, downstream of the Elk Lake Road Culvert. Photo taken by ESLA.



EXHIBIT 1
Page 20 of 20